UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| IN RE: | ROBERT VERNON KENNINGTON | |
| | SUSAN EATON KENNINGTON | CASE NO. 05-14798-DWH |
| | | |
| IN RE: | DONALD BURT STRIDER | |
| | FRAN JOHNSON STRIDER | CASE NO. 05-14797-DWH |

VARCO PRUDEN BUILDINGS, INC.,
d/b/a VP BUILDINGS, INC.                                          PLAINTIFF

VERSUS                                                 ADV. PROC. NO. 06-1017-DWH

DONALD BURT STRIDER                                              DEFENDANT

**CONSOLIDATED WITH**

VARCO PRUDEN BUILDINGS, INC.
d/b/a VP BUILDINGS, INC.                                           PLAINTIFF

VERSUS                                                 ADV. PROC. NO. 06-1018-DWH

ROBERT V. KENNINGTON                                              DEFENDANT

**CONSOLIDATED WITH**

HOUSTON GOODWIN and
GOODWIN ENTERPRISES, INC.                                         PLAINTIFF

VERSUS                                                 ADV. PROC. NO. 06-1028-DWH

DONALD BURT STRIDER                                              DEFENDANT

**CONSOLIDATED WITH**

HOUSTON GOODWIN and
GOODWIN ENTERPRISES, INC.                                         PLAINTIFF

VERSUS                                                 ADV. PROC. NO. 06-1029-DWH

ROBERT V. KENNINGTON                                              DEFENDANT

## OPINION

On consideration before the court in the above captioned adversary proceedings is a motion for summary judgment filed by the plaintiff, Varco Pruden Buildings, Inc., d/b/a VP Buildings, Inc., ("Varco"); no responses to said motion having been filed by the defendants; and the court, having considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A), (I), (J), and (O).

II.

In this proceeding, Varco objects to the dischargeability of a debt owed to it by the defendants, Robert V. Kennington ("Kennington") and Donald Burt Strider ("Strider"), pursuant to 11 U.S.C. §523(a)(2)(A) and (4). Varco also objects to Strider and Kennington receiving a discharge pursuant to 11 U.S.C. §727(a)(3). On July 13, 2005, Kennington and Strider filed separate voluntary petitions for bankruptcy relief pursuant to Chapter 7 of the Bankruptcy Code.

III.

Varco proposed the following undisputed facts, which are set forth hereinbelow verbatim, and to which there was no response or objection by Kennington or Strider, to-wit:

1. Kennington and Strider purchased Universal Steel in 1998. Kennington and Strider owned all of the stock in Universal Steel. Kennington owned 51% of the stock and Strider owned 49% of the stock.

2

2. In 1998 and 1999, the first two years after Kennington and Strider purchased Universal Steel from Goodwin Enterprises, Inc., Universal Steel had approximately $19,000,000 to $20,000,000 of gross receipts on the books amounting to a profit of between $2,000,000 and $5,000,000.

3. According to Kennington, there was no distinction between personal finances of Universal Steel's corporate officers and the company. When asked at his deposition whether the corporation was a "separate entity from yourself," Kennington responded, "they're so intertwined, I wouldn't be able to tell you one way or the other."

4. Kennington and Strider paid themselves salaries out of Universal Steel based on "what they wanted to make." Strider admitted in his deposition that the salaries should have been lower.

5. Kennington and Strider made payments to their children and spouses out of Universal Steel funds not for work done, but as a means to "supplement income."

6. Using Universal Steel funds, Kennington paid his daughter, Allison, $11,760.00 in 2000, and $9,600.00 in 2001, when she was 12 and 13 years old. In his deposition, Strider stated: "And my children got paid, too, but mine worked." Strider confirmed that he never saw Allison, Kennington's daughter, do any work to justify what she was paid.

7. Kennington knew that Universal Steel's finances were questionable during the winter of 2003 - 2004.

8. Kennington drew the following salaries from Universal Steel from 2001 - 2004:

   2001	$129,170.16

   2002	129,694.87

   2003	129,460.08

   2004	120,203.00

   Without any regard to the income or profit of Universal Steel and ignoring its obligations to creditors.

9. Kennington used approximately $85,510.69 in Universal Steel funds (not including labor) to remodel his personal home and fraudulently billed Heatcraft, a Universal Steel customer, for the remodeling services.

10. Kennington used Universal Steel resources to put in a gravel site at a personal duck camp.

11. Kennington signed a contractor's affidavit on the "Starkville" job indicating that all the subcontractors had been paid with full knowledge that approximately $377,000.00 in monies were outstanding to certain subcontractors.

12. Kennington purchased two four-wheelers for his family that were purchased with Universal Steel funds.

13. Kennington transferred a duck boat, four-wheeler, and ski boat to his son, Robert Clark Kennington, in December, 2004, at a time when Universal Steel was over $2,000,000.00 in debt.

14. Kennington and Strider continued to pay themselves salaries of approximately $10,000.00 a month through the end of 2004, despite having actual knowledge as

early as October, 2003, that Universal Steel was in financial trouble.

15. Kennington and Strider used employee insurance benefits to pay off creditors during the last months of 2004. At the time that Kennington began using employee insurance benefits to pay creditors, he was still drawing a $100,000.00 salary for himself.

16. Kennington and Strider used Universal Steel employees, equipment, and resources to perform jobs for another company Kennington and Strider owned, Phoenix Group LLC, without fully paying Universal Steel for the services and labor. Kennington and Strider personally benefitted from the Phoenix Group LLC jobs and never reimbursed Universal Steel for the employees, equipment, and resources used to perform said jobs.

17. Kennington and his son, after the filing of his bankruptcy petition, continued to drive a 2001 Dodge Ram and 2001 Chevy Tahoe owned by Universal Steel.

18. Universal Steel went out of business and closed its doors January 2005.

19. VP obtained a $254,036.59 (not including significant interest and fees now accrued) default judgment in the Circuit Court of Grenada County, Mississippi against Universal Steel, Robert Kennington, Susanne Kennington, Donald Strider, and Fran Strider, which was filed and recorded on March 10, 2005. Much of the debt owed to VP was incurred after the date that Kennington admitted that he knew Universal Steel was in financial trouble in October, 2003.

20. In May or June, 2005, Kennington sold a 2001 Soft Tail Deuce motorcycle to Glen Smith of Memphis, Tennessee. Kennington sold another motorcycle in the

spring of 2005 to an unknown purchaser in Cleveland, Mississippi.

21. The complete corporate books of Universal Steel were contained on Universal Steel's computer. Kennington had sole custody and access to this computer during the downfall of Universal Steel and well into the discovery process of this case. After production of the hard drive of said computer, representatives of VP and Goodwin Enterprises, Inc., were unable to access any financial information. This court, in an April 19, 2007, order commanded Kennington to fully cooperate and obtain the complete corporate books stored on Universal Steel's computer. Kennington has failed to produce any corporate records from said computer.

22. Evidence of the corporate books of Universal Steel has been completely spoliated by Kennington.

IV.

Summary judgment is properly granted when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056; Uniform Local Bankruptcy Rule 18. The court must examine each issue in a light most favorable to the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Phillips v. OKC Corp., 812 F.2d 265 (5th Cir. 1987); Putman v. Insurance Co. of North America, 673 F.Supp. 171 (N.D. Miss. 1987). The moving party must demonstrate to the court the basis on which it believes that summary judgment is justified. The nonmoving party must then show that a genuine issue of material fact arises as to that issue. Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct.

2548, 91 L.Ed.29 265 (1986); Leonard v. Dixie Well Service & Supply, Inc., 828 F.2d 291 (5th Cir. 1987), Putman v. Insurance Co. of North America, 673 F.Supp. 171 (N.D. Miss. 1987). An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a fact finder to find for that party." Phillips, 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." Phillips, 812 F.2d at 272.

V.

11 U.S.C. §727(a)(3) states the following:

> The court shall grant the debtor a discharge unless -
> (3) The debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances.

In the case of *Womble v. Pher Partners*, 289 B.R. 836 (N.D. Tex. 2003) (aff'd by unreported opinion 108 F. Appx. 993), the court stated that the intent of §727(a)(3) is "to allow creditors and/or the trustee to examine the financial condition and determine what has passed through a debtor's hands." *Womble*, 289 B.R. at 856. A creditor in order to prevail on a §727(a)(3) claim must prove that (1) that the debtor failed to keep or preserve books or records; and (2) that the failure makes it impossible to ascertain the debtor's financial condition and material business transactions. *Id. See, Beneficial Mortgage Co. v. Craig (In re Craig)*, 140 B.R. 454, 458 (Bankr. N.D. Ohio 1992). "[T]he creditor does not have to show intent or recklessness. Even negligence will suffice to justify a [denial of] discharge under §727(a)(3)." *Buckeye Retirement Co. v. Bullough*, 358 B.R. 261 (283 N.D. Tex. 2007). *See also, In re Jones*, 327 B.R. 297, 303 (Bankr. S.D. Tex. 2005).

7

The *Womble* court noted the following:

> Creditors are entitled to written evidence of the debtor's financial situation and past transactions; maintenance of such records is a prerequisite to discharge...[T]o meet the requirements of the Code, the records must at least allow for reconstruction of the debtor's financial condition. The court, in determining whether the books and records produced are sufficient to trace the debtor's financial history, has reasonably wide discretion.

*Womble*, 289 B.R. at 856. (citations omitted)

Significantly, an individual debtor may not escape the requirements of §727(a)(3) when the individual fails to produce records of an entity that is not in bankruptcy. As *Womble* points out, §727(a)(3) "speaks in terms of failure to maintain adequate records not only of the debtor's financial condition, but also of his 'business transactions'." *Id.* at 857. "[I]n the context of a debtor who owns or controls closely held entities...the debtor's failure to keep adequate records for such entities, as well as the debtor's business dealings with such entities, may constitute a violation of §727(a)(3)." *Id.* A debtor who has failed to maintain adequate records for the business enterprise which the debtor owned and operated should not be granted a discharge. *Id.*

*Womble* also discussed how the co-mingling of assets between the debtor and other entities can lead to a violation of §727(a)(3). The court stated that "[w]hen such a debtor's records lead to a 'confusion of assets' between the debtor and his entities, or when the corporate records of the debtor's entities are missing, the debtor has failed to maintain adequate records as mandated by §727(a)(3)." *Id.* at 858. This court completely agrees with the conclusion reached in *Womble*.

8

Pursuant to the deposition testimony of Kennington, there was no distinction between the personal finances of Universal Steel's corporate officers and the corporation itself. Kennington was asked whether the corporation was a "separate entity from yourself." He responded, "they're so intertwined, I wouldn't be able to tell you one way or the other." There is no dispute that there was a complete co-mingling of the assets between the individual debtors and Universal Steel. The records of Universal Steel are obviously missing. Kennington had sole access to the Universal Steel computer. The hard drive of the computer was produced, but representatives of VARCO and Goodwin Enterprises were unable to access any of the financial information. (See the affidavit of Cliff Osborne, attached as Exhibit E to VARCO's motion for summary judgment.) (See also the affidavit of Christy Miller, attached as Exhibit F to VARCO's motion for summary judgment.)

Pursuant to a court order, Kennington, was ordered to cooperate in obtaining the financial records relating to Universal Steel and the obligations owed by Kennington and Strider to the plaintiffs. (See the court's order on motion to compel entered April 19, 2007.)

To date, no financial information for Universal Steel has been provided by Kennington and Strider from the time they purchased the company until the time the business was closed. Each of the necessary elements, set forth in *Womble*, to establish a §727(a)(3) claim has been met. The defendants' failure to preserve the Universal Steel corporate records makes it impossible to verify their financial condition and their business transactions. *Womble*, 289 B.R. at 857. Kennington and Strider's failure to keep and preserve adequate records constitutes a violation of §727(a)(3), and this failure is attributable to both Kennington and Strider. VARCO has met its burden of proof. Kennington and Strider should not be granted discharges in

bankruptcy.

Due to the decision to deny Kennington's and Strider's discharges pursuant to §727(a)(3), there is no reason to discuss the §523(a) claims raised by VARCO.

The court is of the opinion there are no material factual issues remaining in dispute, and that VARCO is entitled to a judgment as a matter of law. A separate judgment will be entered consistent with this Opinion..

This the 21st day of August, 2008.

/s/ David W. Houston, III
DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE